Woodruff *v.* Stickle.

---

NOAH WOODRUFF and others, executors, &c.,

*v.*

SOLOMON A. STICKLE, and others.

1. Where a mortgage provided that the mortgagee should release parts of the mortgaged premises, on request of the mortgagor or his heirs or assigns, on receipt of not less than $300 an acre, *Held,* that the liability of the mortgagor to pay deficiency was not affected by the fact that the mortgagee, in the absence of notice of the assumption of the mortgage debt by a grantee of the mortgagor, and in the absence also of any notice not to release for a less sum than $300 per acre, had released, at the request of the grantee, parts of the premises at less than that rate, it not appearing that the price received was less than the full value.

2. The price fixed in the mortgage was for the protection of the mortgagee.

On final hearing on bill and plea of Henry A. Kent, Jr., and answer of Carrie E. and Edward D. Valentine.

*Mr. W. J. Magie,* for complainants.

*Mr. G. T. Parrot,* for Mr. and Mrs. Valentine.

*Mr. W. P. Wilson,* for Kent.

THE CHANCELLOR.

The bill is filed by the executors of Noah Woodruff, deceased, to foreclose a mortgage given by Mr. and Mrs. Kent and Mr. and Mrs. Valentine to Mr. Woodruff, on thirty-three and one-third acres of land in the city of Elizabeth, to secure the payment of their bond for $9,000, and interest thereon. The bond and mortgage are dated on the 9th of October, 1871. The principal of the bond was payable on the 1st of November, 1876, but, by a provision in the condition, the obligors had the privilege of paying it in instalments, of not less than $500 at a time, on thirty days' notice to the obligee. The mortgage was given for the purchase-money of the mortgaged premises, on the sale thereof, by Woodruff. It contained an agreement, on his part, to release any part of the mortgaged premises from the lien and encumbrance of the mortgage, on payment being made at the rate of $300 an acre for the land released, but he was not bound to release, at all, except on receipt of as much as $500. The mortgagors sold and conveyed the property to William H. Miller, on the 27th of October, 1871. He, by the deed, assumed the payment of the mortgage. On the 20th of October, 1874, Woodruff, for the consideration of $2,800 received by him, released part (ten and one-third acres) of the mortgaged premises, and gave credit for the amount as so much paid on the mortgage. The complainants, by their bill, pray a decree for deficiency against the mortgagors. Kent has pleaded his discharge in bankruptcy, which is admitted, and the complainants consent to

the dismissal of the bill as against him, so far as the prayer for decree for deficiency is concerned.

The Valentines have answered. By their answer they claim that, although Woodruff received, as consideration for the release, (which, they say, was made without their knowledge or consent) only $2,800, they are, in equity, entitled, in the ascertainment of the amount of the decree for deficiency against them, should one be made, to a credit on account of the mortgage debt of $300 more than that sum, that is, to a credit of $3,100, or $300 an acre for ten and one-third acres. This claim is based on what they insist is their equitable right of subrogation, in view of the assumption of the mortgage debt by Miller, to the rights of Woodruff under the mortgage, if compelled to pay the debt.

Their answer (there is no testimony in the case) sets up no other facts than those above stated as the basis of their claim. Though the release was made without their knowledge or consent, it does not appear that, when it was made, Woodruff had actual notice of the right to subrogation which is now set up. It does not appear that he had actual notice of the assumption by Miller of the payment of the mortgage. But he, of course, had notice of the conveyance to Miller, and was aware of the fact that the mortgagors, being personally liable on their bond, had the right to look to the mortgaged premises for indemnity against that liability. It is not alleged that he did not act in good faith and with just intention. He was under obligation to release on certain conditions, but those conditions were intended merely for his own protection. He was not to be required to release on receipt of a less sum on account of the mortgage money than the part released would amount to at $300 per acre, and not at all except on receipt of at least $500 on account of the mortgage debt. He was, of course, at liberty, as between him and the mortgagees, while they were the owners of the property, to release, if he saw fit to do so, without consideration. He was bound to their grantee by the agreement to release. Indeed, they do not complain

because he released, but because he did not receive a larger sum of money as a consideration for the release. There is no evidence, however, and it is not even alleged that he did not receive the full value of the premises released. The price of $300 per acre was fixed for his protection, not theirs. It does not appear that his release wrought any injury to them. If he received the full value of the land released as consideration for the release, (and, as before remarked, there is no evidence or allegation that he did not,) they have sustained no injury. They did not notify him not to release at a less price than $300 an acre. They do not appear to have been deprived of any right.

There will be a decree for deficiency against the Valentines and Mrs. Kent. They are not entitled to the allowance which they claim.